IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DONROY WALKER,

              Petitioner,          Civil No. 09-1414-CL

      v.                           FINDINGS AND
                                        RECOMMENDATION

MARK NOOTH,

              Respondent.

CLARKE, Magistrate Judge.

    Petitioner is in the custody of the Oregon Department of Corrections pursuant to a judgment dated August 27, 2004, from the Multnomah County Circuit Court after convictions for one count of Sexual Abuse in the First Degree and one count of Unlawful Sexual Penetration in the First Degree. Exhibit 101. After a jury convicted petitioner, the trial court imposed a 75-month sentence of imprisonment for the count of Sexual

1 - FINDINGS AND RECOMMENDATION

Abuse and a concurrent 100 months for the remaining count of Unlawful Sexual Penetration. *Id.*

Petitioner directly appealed his convictions, but the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. Exhibits 104 - 110.

Petitioner filed an Amended Petition for Post-Conviction Relief, Exhibit 111, but the Malheur County Circuit Court denied relief. Exhibit 134. Petitioner did not appeal the PCR trial court judgment.

Petitioner filed a pro se petition for habeas corpus relief under 28 U.S.C. § 2254 alleging numerous claims for relief. Subsequently the Federal Public Defender was appointed to represent petitioner. Petitioner's counsel filed an Amended Petition alleging four claims. Amended Petition (#6) p. 2-3. Respondent moved to deny relief on the ground that petitioner's petition was not filed within the time allowed by 28 U.S.C. § 2254. Response (#18).

In a Joint Status Report (#30) respondent withdrew the statute of limitations defense and petitioner agreed to "narrow his petition to present only [Claim One of the Amended Petition]".

Petitioner alleges in Claim One: The State violated the Fifth, Sixth, and Fourteenth Amendments, *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Escobedo v. Illinois*, 378 U.S. (1964)

2 - FINDINGS AND RECOMMENDATION

when it used as evidence petitioner's statements which were obtained without proper advice of rights and knowing, intelligent, and voluntary waiver of those rights." Amended Petition (#6), p. 2.

Petitioner raised this claim on direct appeal in a *pro se* Supplemental Brief, Exhibit 105, and presented it in a Supplemental *pro se* Petition for Review by the Oregon Supreme Court. Exhibit 108.

The facts giving rise to petitioner's claim are as follows. In January of 2003, Portland Police Bureau Detective Gary Boek investigated petitioner for sexual abuse of a minor girl in Multnomah County, Oregon. On January 16, 2003, Detective Boek and his partner drove to petitioner's neighborhood and located petitioner walking in the neighborhood. The officers interviewed petitioner and obtained a DNA sample.

Prior to trial, petitioner moved to suppress his statements to Detective Boek, arguing *inter alia* that his statements were involuntary in violation of his Federal constitutional rights. Exhibit 125. After a hearing, the court denied petitioner's motion. Exhibit 103, p. 63-70.

Respondent argues that the trial court decision denying relief on petitioner's Claim One was a reasonable application of clearly established United States Supreme Court precedent

3 - FINDINGS AND RECOMMENDATION

and therefore, "relief on petitioner's ground one should be denied." Reply in Support(#44), p. 7.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, habeas relief may be granted only when a state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceedings." 28 U.S.C. § 2254(d); Wiggins v. Smith, 539 U.S. 510, 520 (2003).

A state court's decision is "'contrary to' federal law if it fails to apply the correct controlling Supreme Court authority or comes to a different conclusion ... [from] a case involving materially indistinguishable facts." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) (citing Bell v. Cone, 535 U.S. 685, 694). The Supreme Court has held that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 409 (2000).

In addition, under 28 U.S.C. § 2254(d)(2), a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of

4 - FINDINGS AND RECOMMENDATION

rebutting the presumption of correctness by clear and convincing evidence. Miller-El v. Cockrell, 537 U.S. 322, 351 (2003).

On July 7, 2004, the trial court held a pretrial hearing on petitioner's motion to suppress and detective Boek testified. After hearing arguments from the parties, the trial court made the following findings of fact.

> [T]he court find that on January 16, Of 2003, Detective Boek ... [and] Detective Miller, went ... in the area of 122nd Southeast Caruthers, where they had information that the [petitioner] was residing, and went to the door there. A person was identified on the record as a renter, and said that the [petitioner] wasn't there and that he may be off making a telephone call.
>
> Detectives then looked around the area. ... [O]n 122nd, they saw a person walking along who met the description of [petitioner]. The officers were actually northbound [and] had to do a U-turn to get back and pull along side where the [petitioner] was walking.
>
> There isn't any testimony about what the street is like there, and I would find that it was a lawful place to stop. [The] detectives got out of the vehicle. Detective Boek . . . went up to [petitioner]. [He] [a]sked if [petitioner would mind if he spoke to him. The answer was, "Okay." They were on the sidewalk.
>
> * * * * *
>
> [Petitioner] was asked if he minded if they would talk in the car, and ... the detective testified that the implication of the conversation that they had is that they would talk in the car and that they were moving toward the car, or as they were moving towards the car is when he patted [petitioner] down.

5 - FINDINGS AND RECOMMENDATION

> I'm going to find that there was no response by the [petitioner], but the [petitioner] did accompany them toward the car, and I find the implication being that he consented to speaking to them in the car.
>
> As they were moving, the officer, without asking him, patted him down, external clothing. He put [petitioner] into the backseat behind the driver. They drove to the Safeway parking lot, which was close by. There was a large open area there where they spoke. Before questioning [petitioner], the detective told the petitioner that he was not under arrest, that he was free to go. That he gestured towards the locking device to show that it was up, and that [petitioner] ... could leave any time. He asked [petitioner if he understood that, and [petitioner] said, "Yes." Then the detective went on with the questioning.

Exhibit 103, p. 63-67.

Petitioner has not offered any clear and convincing evidence to rebut the court's factual findings. Therefore, the factual findings are presumed to be correct. 28 U.S.C. § 2254 (d)(2); <u>Miller-El v. Cockrell</u>, supra. In addition the courts findings are supported by the record of the hearing on petitioner's motion in *liminie* to suppress statements. <u>Id</u>. p. 2 -62.[1]

The court made the following legal conclusions:

> That it was lawful to ask the [petitioner] if he minded saying who he was and the response was voluntary. The question about asking if he would talk to them was lawful and the response was voluntary. [H]is going to the vehicle was voluntary.

---

[1]Petitioner does not argue that the state court decision was based on an unreasonable determination of the facts.

6 - FINDINGS AND RECOMMENDATION

And because there's transportation, the whole calculus changes ... He was not told he was going anyplace, but he was transported ... I think the significance is that a reasonable person would be thinking " ... what I consented to has changed."

Now there was no questioning during this brief transportation. It seems to me that the consent that was given on the street was abrogated. The question then becomes, even begging the question that the transportation was unlawful, was it taken advantage of. And the real question is whether ... the statements that were made to the detective at the car sets up a situation where we have a non-exploitation of arguably a non-consensual ... act. And the officer tells him he is not under arrest. He's free to leave. He gestures towards the door where the locking device is showing it was unlocked. Told him he could get out at any time. Asked him if he understood all that, and he said yes.

Now we're not talking about movement ... that's just incidental. For example, getting consent from someone in a bedroom and moving them out into a living room to talk ... So ... it's a significant thing, nd I think any time the police take anybody anywhere ... based on consent, ... there has to be good expressed consent..

But again, this is not the middle of the night. It's not a long distance. While it is true that [petitioner] argues that the "turf" has changed, I can't find that it's not his turff. We're talking about a Safeway parking lot just down the street. But he was clearly told he was under arrest (sic)[2] ... nothing in the record would suggest to me that they intended to arrest him. The officers testified that they didn't, but I don't think ... the actions of the officers

---

[2]This is an obvious mis-statement or was transcribed incorrectly. It is inconsistent with the testimony at the hearing, the judge's finding above that petitioner was told he was *not* under arrest. In addition a conclusion that petitioner *was* under arrest would clearly have caused the judge to render a different judgment regarding the admissibility of the statements.

7 - FINDINGS AND RECOMMENDATION

> indicated that they had planned to take him and arrest him in any event.
>
> He was free to go. He was told that. He wasn't locked in. He could of just opened the door and got out. And he [was] asked if understood all that.
>
> Said in that context and with those warnings and with the movement being as short as it is and the nature of the initial encounter, that, even begging the question that it was unlawful movement of the [petitioner], I don't think it was exploited in the facts of this case, and he was properly advised of the true situation that he was free to leave.
>
> So ... I'm denying [petitioner's] motion.

Exhibit 103, p. 67 -70.

After the court denied petitioner's motion to suppress, petitioner proceeded to trial and evidence of petitioner's statements to Detective Boek was admitted. After petitioner was convicted by a jury he appealed his conviction to the Oregon Court of Appeals, where he argued in a *pro se* supplemental brief that his statements were admitted at trial in violation of *Miranda*. The Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review.

The United States Supreme Court has held that a person questioned by law enforcement officers during a custodial interrogation must "first be warned that he has the right to remain silent, that any statement he does make may be used as against him, and that he has the right to the presence of an attorney, either retained or appointed." Miranda v. Arizona,

8 - FINDINGS AND RECOMMENDATION

384 U.S. 436, 444 (1966). Court defined "custodial interrogation," as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444.

*Miranda* warnings are not required every time law enforcement officers question a suspect; rather, they "are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" Oregon v. Mathiason, 429 U.S. 492, 495 (1977). To determine whether a person was in custody at the time of questioning, "a court must examine all of the circumstances surrounding the interrogation." Stansbury v. California, 511 U.S. 318, 322 (1994). However, "the ultimate test is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with formal arrest." Id., (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)).

The Supreme Court has further held that to determine whether a suspect is "in custody" for *Miranda* purposes, "[t]wo discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99,

9 - FINDINGS AND RECOMMENDATION

112 (1995). The test for determining whether a reasonable person would feel free to terminate the interrogation and leave is objective in nature; "[t]he only relevant inquiry is how a reasonable man in the suspects position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420. 442 (1984).

Respondent argues that "[a] reasonable person in petitioner's situation would have felt free to leave the officer's vehicle. Petitioner voluntarily agreed to speak with the officers in their car. Petitioner was not placed in handcuffs. The officers were not in uniform and their vehicle was unmarked. After petitioner was transported to the Safeway parking lot - which the trial court found he did not consent to - it was made clear that petitioner was free to terminate the interview at any time. He was told that he was not under arrest and that he was free to leave." Reply to Petitioner's Brief (#44), p. 10.

Petitioner argues that "[t]he totality of the circumstances demonstrates that a reasonable person in [petitioner's] position would not have felt free to terminate the interrogation and leave the car. [Petitioner] was approached on the street, patted down without consent, asked to get into the back of a police vehicle, and driven to another location. He was questioned by two detectives in the

10 - FINDINGS AND RECOMMENDATION

close confines of the police vehicle and confronted with evidence of his guilt and the threat of a sentence under Measure 11. Detective Boek did not record the interrogation of Mr. Boek (sic) though he had a tape recorder available. ... Throughout [petitioner] appeared very nervous, shaking his leg uncontrollable as he was questioned. ... The interrogation lasted an hour, and [petitioner] was never given *Miranda warnings.*" Brief in Support (#32) p. 13.

Petitioner's argument would be more persuasive were it not for the fact that it is undisputed that petitioner was expressly and specifically informed that he was not under arrest and that he was free to leave. Detective Boek gestured towards the door to indicate that it was unlocked and petitioner was told he could get out at any time. Petitioner was asked if he understood this and he replied that he did.

Under these circumstances I find that a reasonable person would have felt free to terminate the interview and exit the detective's vehicle.

Petitioner argues that "although the detectives told [petitioner] he was not under arrest and was free to leave, their actions indicated otherwise." Brief in support (#36) p. 11. Specifically petitioner argues "[b]y stating that [petitioner] was 'free to leave' after driving him to another location, Detective Bok may have been attempting to circumvent

11 - FINDINGS AND RECOMMENDATION

the requirements of *Miranda*." Id.

However, petitioner was told he could leave *after* he was transported to the Safeway parking lot. The record reflects that it was daylight, in petitioner's neighborhood, and petitioner was taken to Safeway because "it was a large open area, close in proximity" and that the detectives did not intend to take petitioner into custody. Exhibit 103, p. 22. There is no evidence that the transportation was a tactic to evade the *Miranda* requirements. *See*, <u>Missouri v. Seibert</u>, 542 U.S. 600, 616 (2004).

There are facts concerning the circumstances of petitioner's statements which support each parties position. Arguably the scale is close to evenly balanced and reasonable minds could differ as to whether or not petitioner was "in custody" for purposes of *Miranda* warnings. However, tipping the scale in favor of the prosecution is the unequivocal statement to petitioner that he was "free to leave" and "could get out anytime." I find that a reasonable person would accept that statement at face value.

Based on the foregoing I find that the trial court decision denying relief on petitioner's *Miranda* violation claim was not an objectively unreasonable application of clearly established Supreme Court precedent and is entitled to deference by this court. Petitioner's Amended

12 - FINDINGS AND RECOMMENDATION

should be denied. This proceeding should be dismissed.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

## Certificate of Appealability

***Should petitioner appeal, a certificate of appealability should be granted.***

DATED this 2 day of February, 2012.

Mark D. Clarke
United States Magistrate Judge